IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CAROL BAKER, <br><br> Plaintiff, <br> v. <br><br> BOARD OF EDUCATION OF LYONS ELEMENTARY SCHOOL DISTRICT 103, COUNTY OF COOK, STATE OF ILLINOIS, <br><br> Defendant. | Case No. 23 C 4645 <br><br> Honorable Sunil R. Harjani |

**MEMORADUM OPINION AND ORDER**

Plaintiff Carol Baker filed a discrimination lawsuit against Defendant Board after her assistant superintendent position was eliminated. She refused to stay on as a District 103 principal – the only position offered to her – and opted instead to retire. Baker alleges that, in the process of her termination, she was discriminated against based on her gender (Count I) and age (Count II). For the reasons explained below, Baker has failed to create a genuine dispute of material fact that the non-discriminatory reasons for her termination were pretextual. Further, she has not presented a similarly situated employee who was substantially younger. Accordingly, the Court grants the Board's motion for summary judgment on all of Baker's claims.

**Statement of Facts**

The Court construes the evidence in the summary judgment record and draws all reasonable inferences in Baker's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Baker was originally hired by the Board as the superintendent of District 103. PRDSOF ¶ 5.[1] Superintendent

---

[1] The Court has taken the facts from the parties' Local Rule 56.1 statements. Unless otherwise noted, the above facts are not in dispute. The Court cites to Defendant's LR 56.1 statement of facts as "DSOF," Plaintiff's response to Defendant's LR 56.1 statement of facts as "PRDSOF," Plaintiff's statement of additional facts as "PSOAF," and Defendant's response to Plaintiff's statement of additional fact as "DRPSOAF."

duties included overseeing departments, implementing and maintaining policies, and directly supervising all the elementary and middle school principals. *Id*. at ¶ 2. However, Baker did not complete her three-year superintendent term but chose to resign in 2018 for unrelated "political reasons." *Id.* at ¶ 5. The Board replaced Baker with superintendent Kristopher Rivera in 2019. *Id.* at ¶ 2.

After a few years in another district, Baker decided to return to District 103 in 2020. *Id.* at ¶ 6.[2] Following conversations with various village officials, and five months of negotiations with Board members, the Board hired Baker back as a principal and assistant superintendent. *Id.* at ¶¶ 15-19, 26, 28, 30. The Board specifically created the assistant superintendent position for Baker, who assisted in drafting the job description; she also negotiated her salary with the Board. *Id.* at ¶¶ 17-20, 26, 28, 30. In this position, Baker was to use her prior experience and knowledge to assist Rivera. *Id.* at ¶ 17. The combined position had a total salary of $135,000 with a two-year employment contract from 2020-2022. *Id.* at ¶¶ 28, 30.

Baker's combined positions did not proceed as hoped. The Board was happy with Baker's work as a middle school principal during the first year, however, during the second year there were concerns. DRPSOAF ¶ 14. For example, the Board points to two issues – a dress code violation with a transgender student and a student bringing a knife to school – which Baker did deal with in her principal capacity, but there were questions of whether Baker was meeting the Board's legitimate expectations with these two incidents. DRPSOAF ¶¶ 21-26.[3] However, Baker was not disciplined for the dress code incident, was never put on a performance improvement plan, and her

---

[2] Baker admits parts of paragraph six, including that she took a two-year position from 2018-2020 with another district, and that in 2020 she applied for a principal position in District 103.

[3] For paragraph 23 and 25, the Board admits portions of these facts and objects to the remaining facts. The Court uses only the agreed facts from paragraph 23 and 25.

performance was not evaluated. DRPSOAF ¶¶ 22, 25, 26. Regarding the assistant superintendent position, after their first year working together, superintendent Rivera felt that Baker was undermining him and failing to support him in different instances. DRPSOAF ¶ 15; PRDSOF ¶ 36.[4] As a result of these concerns, Rivera, the Board President, Baker, and an attorney for District 103 met to make sure everyone was on the same page moving forward. PRDSOF ¶ 37. During Baker's second year, more concerns were brought up, including reports and complaints from parents, teachers, and staff. *Id.* at ¶¶ 38, 46. The Human Resources Director for District 103 was informed that Baker had trouble executing initiatives. *Id.* at ¶ 42. Given these issues, Rivera had multiple discussions with the Human Resource Director, the Board, and the attorney for the district about Baker's lack of support, unity, and undermining behavior, which he felt hurt the district. *Id.* at ¶ 45. Because Baker's assistant superintendent position was not working out, Rivera recommended the Board eliminate it after her 2022 contract expired, which would have the added benefit of saving District 103 money. *Id.* at ¶¶ 44-45. Both parties agree that no one stated that Baker's age or gender was a reason for her non-renewal of the assistant superintendent contract. *Id.* at ¶ 47.[5] Instead, based on Rivera's recommendation, the Board voted to eliminate the assistant superintendent position on March 22, 2022. *Id.* at ¶ 55.

Still, Baker was given the opportunity to stay on in a principal-only position, but refused the offer because the pay was less than her dual position contract. *Id.* at ¶¶ 59-60. As noted above, Baker's original dual position of principal and assistant superintendent had a total salary of $135,000. *Id.* at ¶ 28. In contrast, the salaries of individuals hired as principal for the 2022-2023

---

[4] Baker admits that Rivera felt Baker was undermining him but denies actually undermining Rivera. PRDSOF ¶ 36. The Court uses the portion of the paragraph admitted by Baker.

[5] Once more, Baker admits in part to these facts and objects to the remaining facts. The Court uses only the agreed facts from paragraph 47.

school year ranged from $98,000 to $105,480 for individuals who wanted health insurance. *Id.* at ¶ 73. After the Board voted to eliminate the assistant superintendent position, Baker was given a standard principal contract at a salary of $104,743. *Id.* at ¶¶ 48, 73. The decrease was because the Board passed a resolution to change all principal contracts for the 2022-2023 school year to 206 days instead of 260 days in order to save money. *Id.* at ¶ 58.[6] Thus, Baker's salary was recalculated by taking her daily rate for her prior position (the 260-day assistant superintendent/principal contract) and applying it to a new 206-day principal-only contract. *Id.* at ¶ 57. Baker refused this position and instead retired. DRPSOAF ¶ 35.[7] She was replaced in the principal position by Joshua Dakins, who was 47 years old, and accepted a dual role as principal and District Athletic Director. PRDSOF ¶ 63; DRPSOAF ¶ 36.

## Discussion

Baker brings two causes of action in this case: (1) sex discrimination in violation of Title VII of the Civil Rights Act of 1964; and (2) age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"). The Board moves for summary judgment on both counts.

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling on a motion for summary judgment, the Court does not "weigh the evidence and determine the truth of the matter" but rather determines whether "there is sufficient evidence

---

[6] Baker denies the fact that there was a resolution to change the principal contracts to 206-days in order to save money. PRDSOF ¶ 58. In support, she cites her own deposition. A review of her deposition shows that she does not dispute that the resolution was passed or that the contract offered to her was changed for that reason, only that the change was "never explained" to Baker. *See* PSOF at Ex. A, 157:19-158:5. Thus, the fact that there was a resolution and that Baker's contract was changed because of said resolution is deemed admitted.

[7] Both parties agree that Baker retired but disagree on the reasons behind the retirement.

favoring the nonmoving party for a jury to return a verdict for that party." *Liberty Lobby*, 477 U.S. at 249.

Both discrimination claims are analyzed under the same framework. The Court reviews the evidence of discrimination holistically to determine if a factfinder could conclude that Baker's sex and age were factors in her discharge. *See Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 766 (7th Cir. 2016). In addition to the holistic approach proscribed in *Ortiz*, the parties proceed under the familiar burden shifting framework of *McDonnell Douglas Corp. v. Green* to prove discrimination indirectly. 411 U.S. 792 (1973). Under this framework, Baker has the burden to prove a *prima facie* case of discrimination. *Moser v. Indiana Dep't of Corr.*, 406 F.3d 895, 900 (7th Cir. 2005). If Baker meets her burden, a presumption of discrimination arises, and the employer must articulate a legitimate and non-discriminatory reason for the employment action. *Id.* If that additional burden is met, the burden shifts back to Baker to show the proffered reason was pretext for discrimination. *Id.*

**Plaintiff's Hearsay Objections**

Before addressing the merits, Baker objects to statements the Board included in affidavits that are used to support the Board's Rule 56.1 statement of facts. Affidavits may be used to support a motion for summary judgment if they are made on personal knowledge, set out facts that would be admissible evidence, and the affiants are competent to testify. Fed. R. Civ. P. 56(c)(4). Baker does not challenge that the affidavits are made on personal knowledge or that the affiants are competent to testify. Instead, Baker's only objection is that the statements used to support the Board's Rule 56.1 statement of facts are inadmissible hearsay evidence. The Court need not address every paragraph of the Board's Rule 56.1 statement of facts that Plaintiff objects to. There

5

are only two paragraphs in the Board's Rule 56.1 statement of facts (numbers 45 and 46) that the Court relies on for its analysis below.

Starting with paragraph 46 of the Board's Rule 56.1 statement of facts, Baker objects to the stated fact that "Board members received complaints about Baker from parents, teachers and staff" because the statements purportedly rely on "inadmissible evidence (hearsay)." PRDSOF ¶ 46. Paragraph 46 cites three separate affidavit paragraphs in support of that fact that Board members received complaints. *See* PSOF at Ex. D ¶ 16; Ex. E ¶ 16; Ex. G ¶ 7. Each of these affidavits are from Board members – Jorge Torres, Olivia Quintero, and Mario Ramirez – who sat on the Board while Baker served as principal/assistant superintendent. The first two affidavit paragraphs (paragraphs 16 of Torres and Quintero's affidavits) state that the affiants received or were made aware of complaints about Baker's performance from parents, teachers, and staff. *See id.* at Ex. D ¶ 16; Ex. E ¶ 16. Similarly, the third affidavit paragraph – paragraph seven of Exhibit G – states that the affiant was made aware of complaints from staff about Baker. *Id.* at Ex. G ¶ 7. Baker argues each of the affidavit paragraphs used to support paragraph 46 is inadmissible hearsay.

Hearsay is an out of court statement being offered to prove the truth of the matter asserted. Fed. R. Evid. 801(c). In *Luckie v. Ameritech Corporation*, the Seventh Circuit affirmed the district court's admission of portions of an affidavit where an individual was having conversations about the plaintiff's "toxic effect on the department." 389 F.3d 708, 716 (7th Cir. 2004). The Seventh Circuit noted that the statement was not hearsay because it was not offered to prove the truth of the matter asserted – that someone had a toxic effect – but instead showed the individual's state of mind when evaluating the plaintiff's performance. *Id.* Relying on *Luckie*, the Seventh Circuit in *Khungar v. Access Community Health Network*, similarly found that complaints are not hearsay when they are used to show the state of mind of individuals when making an employment

recommendation. 985 F.3d 565, 575 (7th Cir. 2021). Here, the affidavits cited in support of paragraph 46 of the Board's Rule 56.1 statement of facts are from Board members (Jorge Torres, Olivia Quintero, and Mario Ramirez) who voted to eliminate the assistant superintendent position and not renew Baker for that position. PRDSOF ¶ 55. These affidavit paragraphs are not hearsay because they are not being offered to show that Baker was in fact behaving in the manner complained of. Instead, they are used to show the affiants' state of mind when they made the decision to terminate the assistant principal position. *See Luckie*, 389 F.3d at 716; *Khungar*, 985 F.3d at 575. As a result, the Court accepts paragraph 46 over Baker's objection.

Likewise, Baker again objects to paragraph 45 of the Board's Rule 56.1 statement of facts. Paragraph 45 states that "Rivera discussed his concerns about Baker's lack of support, lack of unity and undermining behavior" with various individuals, including Board members. PRDSOF ¶ 45. In support of these facts, the Board cites the depositions of superintendent Rivera and the Human Resources Director, as well as four affidavit paragraphs from Board members. The four affidavit paragraphs cited in support of paragraph 45 are from Jorge Torres, Olivia Quintero, Winifred Rodriguez, and Mario Ramirez. Each affidavit paragraph states that superintendent Rivera told the Board that Baker was detrimental to the district because she was undermining him, challenging his authority, and failing to support him as originally planned. *See* PSOF at Ex. D ¶ 17; Ex. E. at ¶ 17; Ex. F at ¶ 16; Ex. G at ¶ 8. Baker objects to paragraph 45 on the basis that it relies on "affidavits contain[ing] inadmissible evidence (hearsay)." PRDSOF ¶ 45. First, for the same reasons outlined above, this is not hearsay. These affidavits are not being offered to show that Baker was undermining Rivera, challenging his authority, or failing to support him. Instead, as in *Luckie* and *Khungar*, they show the affiant Board member's state of mind when they made the decision to terminate the assistant principal position. *See Luckie*, 389 F.3d at 716; *Khungar*, 985 F.3d at 575.

However, in support of paragraph 45, the Board includes deposition citations as well. PRDSOF ¶ 45. In Rivera's deposition, he attests to having discussions about Baker's position not working out with various Board members, the Human Resources Director, the Board president, and district attorney. *See* PSOF at Ex. B at 50:20-54:15. He states that he felt Baker's failure to work as a team player was causing harm to the district. *Id.* Baker does not dispute or present any evidence that contradicts Rivera's testimony, and thus Baker's objection is immaterial. These facts are deemed admitted over Baker's objections.

## Count I: Sex Discrimination

Baker claims she was subjected to sex discrimination when her assistant superintendent position was eliminated and she was offered a non-negotiable principal-only position at a reduced salary, leading to her retirement. To establish a *prima facie* case of gender discrimination, Baker must show that: "(1) she belongs to a protected class; (2) her performance met her employer's legitimate expectations; (3) she suffered an adverse employment action; and (4) similarly situated others not in her protected class received more favorable treatment." *See Moser*, 406 F.3d at 900. The Board concedes that Baker is a member of a protected class and that she suffered an adverse employment action when her assistant superintendent position was eliminated. But the Board argues that Baker has failed to show that she met its legitimate expectations (prong two) and that similarly situated employees received more favorable treatment (prong four). In the event the Court finds Baker has met her *prima facie* burden for gender discrimination, the Board also contends that Baker has not shown pretext in her termination.

Courts may skip the *prima facie* analysis and proceed to the pretext analysis if a defendant offers a nondiscriminatory explanation for its employment decision, as the *prima facie* and pretext inquiries often overlap. *Benuzzi v. Board of Educ. of City of Chicago*, 647 F.3d 652, 663 (7th Cir.

8

2011). Here, the Court opts not to address the Board's arguments regarding the *prima facie* case, assumes Baker has met her burden, and moves straight to the issue of pretext.

To prove pretext, Baker must show the Board's stated reasons for terminating the assistant superintendent position and offering her the lower principal contract were dishonest or phony, and that the true reason was discriminatory animus. *See id.* If a reasonable fact finder could honestly believe the Board's reasons, then they are entitled to summary judgment. *See Argyropoulos v. City of Alton*, 539 F.3d 724, 736 (7th Cir. 2008). In rebuttal, Baker must present record evidence to cast doubt on the Board's reason. *Id.* However, the evidence must be more than mere speculation that a discriminatory animus motivated the adverse employment actions. *See id.* at 736-37; *Lauderdale v. Illinois Dep't of Human Servs.*, 876 F.3d 904, 910 (7th Cir. 2017).

The Seventh Circuit's reasoning in *Lauderdale* is determinative. In that case, a female individual was offered a role as superintendent of two schools. *Lauderdale*, 876 F.3d at 906-07. However, she was paid less than the outgoing male superintendent of one of those schools. *Id.* Upon review of the evidence, the district court held that no reasonable juror could find the explanations of the Illinois Department of Human Services pretextual. *Id.* at 907. The defendant provided reasons explaining the wage difference – that plaintiff's salary was based on her prior wages, which were lower. *Id.* at 909-10. Additionally, the primary cause of the pay discrepancy was the defendant's budget concerns. *Id.* at 911. The record contained compelling evidence that the Department believed the budget's pay plan was applicable and set the salary. *Id.* at 908. The plaintiff expressed doubt that this was the genuine reason but also admitted that she was aware of budget concerns. *Id.* at 911. But the plaintiff offered no additional evidence to prove pretext. *Id.* The Seventh Circuit agreed with the district court's finding that there was no proof of pretext and affirmed the grant of summary judgment. *Id.* at 911-12.

As in *Lauderdale*, the Board offers nondiscriminatory reasons for the termination of the assistant superintendent position. Baker agrees that, after she was rehired, the Board received complaints about her as an assistant superintendent, that superintendent Rivera felt she undermined him, and that her behavior was viewed as detrimental to the district. PRDSOF ¶¶ 36, 42, 45-46. No one said anything about Baker's gender as a reason for her non-renewal. PRDSOF ¶ 47. Instead, since the assistant superintendent position created for Baker was not working out as expected, Rivera recommended the Board eliminate it. PRDSOF ¶¶ 44-45, 55. The Board agreed with Rivera's recommendation and voted to eliminate the assistant superintendent position on March 22, 2022, which had the added benefit of saving the district money. *Id*. Baker does not present any evidence that Rivera's recommendation and the Board's decision were based on her gender. Nor does Baker dispute the reason the Board provided for the position elimination – that the position was not working out as expected. To show pretext, Baker must do more than simply claim that the Board's reasons are inaccurate or lies. *Benuzzi*, 647 F.3d at 663. She has not done so.

Additionally, the Board had nondiscriminatory reasons for paying Baker less in the principal-only contract. Baker's dual position contract had a total salary of $135,000. PRDSOF ¶ 28. Following the determination that the assistant principal position was not working out, she was offered a standard principal contract for the 2022-2023 school year at a salary of $104,743. *Id.* at ¶ 48. This agreement was based on 206 days of employment, less than Baker's prior contract of 260 days, because the Board passed a resolution to change all principal contracts to 206 days in order to save money based on summer down time. DRPSOAF ¶ 29; PRDSOF ¶ 58. Baker's gender was not mentioned as a reason for the decreased salary. PRDSOF ¶ 47. Instead, Baker agrees the new salary was calculated by taking her daily rate for her prior position (the 260-day assistant

superintendent/principal contract) and applying it to a new 206-day principal-only contract. *Id.* at ¶¶ 47, 57.

Baker expresses doubt that the Board was truthful in its reasons for terminating the assistant superintendent position and decreasing her salary. In particular, she argues that, to the extent her performance is at all the reason behind the employment actions, it is clearly pretextual. When multiple reasons for adverse employment actions are given, a plaintiff must offer sufficient evidence to show the reasons were false. *See Tibbs v. Administrative Office of the Illinois Courts*, 860 F.3d 502, 506 (7th Cir. 2017). In *Tibbs*, the defendant presented evidence that the plaintiff was fired for facially legitimate reasons – ignoring instructions, circumventing authority, and creating a new assignment schedule without permission. *Id.* at 506. The plaintiff argued these reasons were phony and pretextual. *Id.* However, the plaintiff did not offer sufficient evidence to support such an inference. *Id.* Instead, the plaintiff admitted some misconduct, argued she was not disciplined in any manner, and stated that other actions were rightfully taken. *Id.* at 507. The appellate court affirmed the grant of summary judgment, holding that merely disagreeing with an employer's reasons was not enough to meet the standard of proving pretext. *Id.* at 506.

Similarly, while there is no dispute that Baker was informed that she was performing well as middle school principal after her first year, there was valid concern about whether Baker was meeting legitimate expectations for both positions throughout the course of her contract. DRPSOAF ¶ 14. For example, the Board points to two issues – a dress code violation with a transgender student and a student bringing a knife to school – which Baker dealt with in her principal capacity where there were questions of whether Baker was meeting the Board's legitimate expectations. DRPSOAF ¶¶ 21-26. Baker argues that she was not disciplined for the dress code incident, she was never put on a performance improvement plan, and her performance

11

was not evaluated. DRPSOAF ¶¶ 22, 25, 26. Therefore, it is Baker's position that, to the extent performance was a reason for terminating her contract, it was pretextual. However, as in *Tibbs*, Baker has not presented sufficient evidence that the reasons put forward are dishonest, instead she is merely disagreeing with the Board's reasons for her termination. 860 F.3d at 506-07. And, like *Tibbs*, Baker admits that there were facially legitimate reasons for the employment actions taken. *Id.* There is an abundance of undisputed record evidence about Baker's difficulties in performing the assistant superintendent position, that she lacked cohesion with superintendent Rivera, and that eliminating Baker's position would save money. DRPSOAF ¶ 15; PRDSOF ¶¶ 36, 42, 45-46. After reviewing the record evidence, the Court determines a factfinder could not conclude that Baker's sex was a factor in the employment decision, whether under *McDonnell Douglas* or the holistic framework. *See Ortiz*, 834 F.3d at 766.

Further, Baker's assertion that her inability to negotiate the principal-only contract was a sign of pretext is also unpersuasive. The record does contain factual disputes about whether Baker was told the principal contract offered was negotiable. PRDSOF ¶¶ 51-54. Even so, Baker presents no evidence that she was told *not* to negotiate based on her gender, or that she even attempted to negotiate. DRPSOAF ¶ 32. Further, there is no evidence that the lesser principal salary was based on discriminatory animus. In fact, the salary of individuals hired to be a principal with health insurance for the 2022-2023 school year ranged from $98,000 to $105,480. PRDSOF ¶ 73. Baker's principal contract was $104,743 and falls in the top quartile of other salaries. And Baker's speculation of pretext, without any additional evidence, is not enough to withstand summary judgment. *See e.g.*, *Argyropoulos*, 539 F.3d at 737 (Plaintiff's speculation that defendant lied to conceal true motives was insufficient to withstand summary judgment). As Plaintiff has failed to

12

raise any material disputes of fact on the issue of pretext for gender discrimination, the Court grants Defendant's motion on Count I.

### Count II: Age Discrimination

In addition to gender discrimination, Baker asserts that the Board's actions were also based on age discrimination. Under the ADEA, an employer may not discriminate against an individual because of their age. *See* 29 U.S.C. § 623(a)(2). Like gender discrimination, to prove a *prima facie* case of age discrimination, a plaintiff must establish that: (1) she belonged to a protected class; (2) her performance met her employer's legitimate expectations; (3) she suffered an adverse employment action; and (4) similarly situated others not in her protected class received more favorable treatment. *See Brooks v. Avancez*, 39 F.4th 424, 434 (7th Cir. 2022). Once more, the Board concedes that Baker is a member of a protected class and that she suffered an adverse employment action. Rather, the Board argues that Baker has failed to show that she met its legitimate expectations (prong two) and has failed to put forward a proper similarly situated employee who received more favorable treatment (prong four). In the event the Court finds Baker has met her *prima facie* burden, the Board also argues that Baker has not shown pretext in her termination.

Baker has failed to raise a genuine dispute that similarly situated individuals not in her protected class received more favorable treatment. Similarly situated employees must be directly comparable to the plaintiff in all material respects. *See Coleman v. Donahoe*, 667 F.3d 835, 846-47 (7th Cir. 2012). While the Seventh Circuit has found that the individual need not prove that the comparator is outside of the protected class (*i.e.* under 40), *see Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.*, 328 F.3d 309, 321 (7th Cir. 2003), it directs courts to look at if

13

someone is "substantially younger." *See Nagle v. Vill. of Calumet Park*, 554 F.3d 1106, 1118 (7th Cir. 2009). Baker only puts forward a single potential comparator: Joshua Dakins.

The presumption of a comparator being substantially younger occurs when there is a ten-year difference in age. *See Hartley v. Wisconsin Bell, Inc.*, 124 F.3d 887, 893 (7th Cir. 1997). Baker was born on June 30, 1966, making her 55-years-old in 2022, when her position was eliminated and she was offered the principal contract. PRDSOF ¶¶ 5, 59. After Baker refused the principal position, the Board offered it to Joshua Dakins, who was 47 years old. DRPSOAF ¶ 36. He accepted the principal position along with another administrative position. PRDSOF ¶ 63. As there is only an eight-year age gap between Baker and Dakins, there is no presumption that Dakins is substantially younger. *See also Pitasi v. Gartner Grp., Inc.*, 184 F.3d 709, 713-14 (7th Cir. 1999) (an eight-year age gap is not significant enough in the Seventh Circuit to create a reasonable inference of age discrimination).

In cases such as this, when the age disparity is less than ten years, a plaintiff may still present a triable claim if she directs the court to evidence that her employer considered her age to be significant. *See Hartly*, 124 F.3d at 893. The Seventh Circuit reasoned in *Bennington v. Caterpillar Inc.* that to show an employer significantly considered age, there must be evidence that the decisions affecting employment were motivated by age. 275 F.3d 654, 659 (7th Cir. 2001). In that case, the defendant decided to eliminate the plaintiff's position and transferred him to a different unit, after which he retired and sued for age discrimination. *Id.* at 658. There was evidence that a younger similarly situated employee was given preferential treatment. *Id.* at 659. And the record included evidence that the transfer unit was derisively referred to as "waste management." *Id.* at 659-60. However, the appellate court found that these comments and actions were not evidence of hostility based on age without more. *Id.* at 659-60. Here, as in *Bennington*,

14

there is no record evidence that Baker's assistant superintendent position was eliminated based on her age. As detailed above, the position was eliminated because there was a lack of cooperation between Baker and superintendent Rivera. There is also no evidence that the reduced pay in Baker's principal contract was based on her age, but instead because of the Board's resolution for all principal contracts. In fact, unlike *Bennington* where there was a derisive comment in the record and preferential treatment of a younger employee, Baker has not put forth any evidence suggesting that the Board considered age in the hiring process, preferred younger employees, or made any comments about age. Baker has the burden to prove a *prima facie* case of discrimination and has failed to do so.

While failing to prove a *prima facie* case is reason enough to grant the Board's summary judgment motion, Baker has also not shown evidence of pretext. The pretext inquiry for age discrimination is the same as for gender discrimination above. Baker must show the Board's stated reasons for terminating the assistant superintendent position and offering her the lower principal contract were false and that the true reason was motivated by age discrimination. *See Senske v. Sybase, Inc.*, 588 F.3d 501, 507 (7th Cir. 2009). In *Skiba v. Illinois Central Railroad Company*, a fifty-eight-year-old applied for a promotion and was asked his age in the interview. 884 F.3d 708, 714 (7th Cir. 2018). He was promoted. *Id.* Two years later, the plaintiff's position was eliminated. *Id.* at 720. He was rejected from other managerial positions because hiring managers: (1) believed he would not respond well to the need for additional training; (2) felt a different, younger candidate would grasp concepts faster; (3) viewed plaintiff as low energy; and (4) knew plaintiff was close to retirement. *Id.* at 720-21. While these comments could exhibit age bias, the district court found that they were innocuous when viewed in context. *Id.* The appellate court affirmed the district court's holding that, reviewing the entire record, there was no evidence that a reasonable fact finder

15

could conclude the plaintiff's age was the reason for the adverse employment action. *Id.* Unlike in *Skiba*, there are no alleged statements that could possibly be construed as exhibiting age bias, which makes this an even stronger case to grant summary judgment. As discussed at length above, the Board gave reasons, which are undisputed, for the termination of the assistant superintendent position they created for Baker (the incompatible work styles of Rivera and Baker) and the principal contract's pay reduction (the Board's resolution mandating contract pay changes). Neither determination was based on Baker's age – or as discussed above, her gender. Baker raises no new or additional arguments besides what the Court has already addressed. And, as with the gender discrimination claim above, Baker does not offer conflicting evidence to show pretext, for example, statements showing the Board was considering age, a hiring rubric that considered experience, or statements about Baker's potential retirement. In fact, reviewing the complete record, there is less evidence that discrimination was possibly a factor behind the employment actions than in many other cases where courts have granted summary judgment. *See Ortiz*, 834 F.3d at 766; *Skiba*, 884 F.3d at 720-21; *see also Senske*, 588 F.3d at 511 (evidence of pretext – firing the oldest managers – did not overcome the avalanche of documentation showing performance fell short of defendant's expectation and thus summary judgment was proper).

      Baker's mere speculation that age is a factor is unpersuasive. In *Skiba*, the appellate court noted that: "[a]t the end of the day, the question is simply whether the same events would have transpired if [plaintiff] had been younger than 40 and everything else had been the same." *Id.* at 725 (cleaned up). Here, the record evidence shows that the answer is affirmative. For this additional reason, the Court grants Defendant's motion for summary judgment on Count II.

16

## Conclusion

For these reasons, Defendant's motion for summary judgment [48] is granted on all counts. Judgment shall enter in favor of Defendant and against Plaintiff.

**SO ORDERED.**

Dated: May 9, 2025

                                              Sunil R. Harjani
                                              United States District Judge